**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **DONNA L. EARLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.:  2:06cv727** |
| | ) | |
| **RHEEM MANUFACTURING** | ) | |
| **COMPANY, a corporation and CAL** | ) | |
| **MEARS, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ANSWER TO COMPLAINT

**COMES NOW** Defendant Rheem Manufacturing Company (hereinafter "Rheem") and answers the Complaint as follows:

1.    Rheem admits only that Plaintiff seeks to invoke the Uniformed Services Employment and Re-Employment Rights Act (USERRA), but denies that it has violated such statute and denies that Plaintiff is entitled to any relief there under.

## I.  JURISDICTION AND VENUE

2.    Rheem admits only that this Court has subject matter jurisdiction with respect to the Plaintiff's claims under USERRA and the Employee Retirement Income Security Act of 1974 (ERISA) and that this Court has *in personam* jurisdiction over the parties.  The remaining allegations of paragraph 2 of the Complaint are denied.

3.    Rheem denies the allegations of paragraph 3 of the Complaint.   In further response to paragraph 3 of the Complaint Rheem states that Plaintiff's state law claims are barred under ERISA's doctrine of preemption.

4.    Rheem denies the allegations of paragraph 4 of the Complaint, but admits that

Plaintiff's place of employment with Rheem was its manufacturing plant located in the Middle District of Alabama.

## II.  PARTIES

5.     Rheem admits that Plaintiff is a black female adult over the age of 19 years and admits on information and belief that she is a resident of Montgomery County, Alabama.

6.     Rheem admits that it is qualified to do business in the State of Alabama and that it has an office located in Montgomery County, Alabama.

7.     Rheem admits that Defendant Cal Mears ("Mears") has been employed by Rheem since March 1, 2004 and, that Mears' known interactions with Plaintiff were within the scope of his employment as Rheem's Employee Relations Representative.

## III.  FACTUAL BACKGROUND

8.     The allegations contained in paragraph 8 are denied.  Rheem admits that it hired Plaintiff on April 2, 1993 and that Rheem deemed her to have resigned effective December 21, 2005 after she had been out of work since August 12, 2004 (over 16 months).  Plaintiff had been absent from work for other prior periods of time after hired by Rheem.  The remaining allegations of paragraph 8 of the Complaint are denied.

9.     The allegations of paragraph 9 are denied.  In further answer to paragraph 9, Rheem states that Plaintiff received short-term disability coverage ("STD") throughout her employment at Rheem without needing to effect it and at no cost to her.  Plaintiff enrolled in Rheem's voluntary long-term disability coverage plan ("LTD") during an open enrollment period for Rheem hourly employees with coverage to take effect in May 2004.

10.     The allegations of paragraph 10 are denied.  In further answer to paragraph 10, Rheem states that Plaintiff was covered by Rheem's defined benefit pension plan for hourly

employees at the Montgomery plant ("Pension Plan") throughout her employment at no cost to her. Plaintiff elected to participate in Rheem's 401K plan effective October 1, 1995 while absent from work.

11.     Upon information and belief, Rheem admits that Plaintiff applied for benefits under Rheem's STD plan. Rheem lacks sufficient information to admit or deny whether Plaintiff filed for LTD benefits. In further answer to paragraph 11, Rheem states that both the STD and LTD plans which Plaintiff references are insurance plans offered and administered by independent insurance companies not affiliated with or controlled by Rheem, therefore, Rheem did not determine Plaintiff's eligibility for benefits under either plan.

12.     Upon information and belief, Rheem admits that Plaintiff applied for and received STD benefits covering the period August 16, 2004 to October 3, 2004. Rheem states upon information and belief that the insurance carrier discontinued Plaintiff's STD benefits because she failed to provide sufficient medical documentation to support her application[s] for benefits.

13.     Upon information and belief, Rheem admits the allegations of paragraph 13 of the Complaint but states that the insurance carrier denied Plaintiff's application for LTD, not Rheem.

14.     Rheem is without sufficient information to determine the truthfulness of the allegations in paragraph 14 of the Complaint; therefore, they are denied pending verification in discovery.

15.     Rheem is without sufficient information to determine the truthfulness of the allegations in paragraph 15 of the Complaint; therefore, they are denied pending verification and discovery.

16.     The vague allegations in paragraph 16 are denied. No monies were deducted from Plaintiff's paycheck for STD which was provided to her as a benefit of her employment at

no cost.  No monies were deducted from Plaintiff's pay with respect to Rheem's Pension Plan which is funded entirely by Rheem without employee contributions.  Rheem admits that payroll deductions for premiums for voluntary LTD insurance coverage were made commencing with the paycheck she received on or about May 14, 2004 through her last paycheck on August 13, 2004.  All allegations of paragraph 16 of the Complaint not specifically admitted are denied.

17.    Rheem denies the allegations of paragraph 17 of the Complaint.

18.    Rheem admits that Plaintiff remained out of work for an extended period allegedly as a result of the injury alleged in paragraph 17 of the Complaint, but Rheem denies the allegations of paragraph 18 concerning the exact duration of Plaintiff's absence from work pending verification in discovery and Company attendance records.

19.    Rheem admits that on or about June 11, 2001, Plaintiff furnished a letter from her doctor allowing her to return to work under certain restrictions.

20.    The allegations contained in paragraph 20 are denied.  Plaintiff was allowed to return to work at Rheem on June 25, 2001, after Rheem consulted with her doctor and identified a position consistent with her medical restrictions.  (*See* composite Ex. 1)

21.    The allegations contained in paragraph 21 are denied.  Upon receiving Plaintiff's letter of June 11, 2001, Rheem undertook to identify a suitable position for Plaintiff consistent with the medical restrictions imposed by her doctor.  This was accomplished and Plaintiff returned to work on Monday, June 25, 2001.

22.    Rheem admits that on or about April 6, 2004 (not April 1st), Plaintiff suffered an injury to her left hand at work.

23.    The allegations contained in paragraph 23 are denied.

24.    The allegations contained in paragraph 24 are denied pending verification in

discovery.

25.     Rheem admits that, over many years, Plaintiff submitted certain notes and excuses relating to doctor visits, but denies that after July 2004 Plaintiff submitted sufficient, understandable documentation to enable Rheem to identify a suitable position consistent with her then medical restrictions.

26.     The allegations contained in paragraph 26 are denied.  On or about July 7, 2004, Plaintiff presented a medical restrictions summary from one of her physicians which imposed new work restrictions.  These new restrictions stated that Plaintiff could use her right hand, but totally restricted any use of her right arm.  Rheem attempted in earnest to identify a job consistent with these new, confusing and self-contradictory restrictions, but Plaintiff claimed she was unable to perform any of the jobs Rheem assigned to her.  After Plaintiff objected to all of the jobs Rheem suggested, Rheem told Plaintiff that it could not identify a suitable position for her without clarification from her doctor of her new confusing and apparently contradictory medical restrictions.  Rheem asked Plaintiff on several occasions to obtain clarification of her restrictions, but each time Plaintiff refused to cooperate.  (*See* composite Ex. 2).  Plaintiff told Rheem that she was not going to ask her doctor to clarify her status, Plaintiff also told Rheem that she was seeking disability status from the military so she could not be activated with her National Guard unit.  Plaintiff never provided the requested clarification and never returned to work.  Instead she applied for STD on or about September 7, 2004.

27.     The allegations contained in paragraph 27 are denied.

28.     The allegations contained in paragraph 28 are denied.  Mears told Plaintiff that Rheem needed clarification from her physicians regarding her of her new confusing and apparently contradictory medical restrictions in order to identify a suitable position for her, but

she refused to cooperate.  Mears did not tell Plaintiff that Rheem did not have any light duty work.

29.    The allegations contained in paragraph 29 are denied.  Rheem admits that Alfred Gardner, its Human Resources Manager, telephoned Plaintiff on or about December 21, 2005, under the belief that Plaintiff had abandoned her employment and had no intention of returning (at that point, Plaintiff had not worked in 16 months, longer than a full year and longer than any of her prior absences) and informed her that Rheem considered her to have voluntarily resigned. (*See* Ex. 3).

### IV.  STATEMENT OF CLAIMS

### CLAIM ONE - VIOLATION OF UNIFORMED SERVICES EMPLOYMENT AND RE-EMPLOYMENT RIGHTS ACT

30.    The allegations of paragraph 30 of the Complaint are denied except as specifically admitted above.

31.    The allegations of paragraph 31 of the Complaint are denied.

32.    The allegations contained in paragraph 32 are denied.

33.    The allegations contained in paragraph 32 are denied.  Plaintiff was allowed to return to work on June 25, 2001, after providing proper documentation from her doctor as to the restrictions under which Plaintiff could return to work and after Rheem and the involved doctors identified a position consistent with her medical restrictions.

34.    The allegations contained in paragraph 34 are admitted.

35.    The allegations contained in paragraph 35 are denied.

36.    The allegations contained in paragraph 36 are denied.

37.    The allegations contained in paragraph 37 are denied. Rheem admits that it has received certain medical slips, excuses and other medical documentation concerning Plaintiff,

6

but denies ever having possessed all of Plaintiff's medical records.

38.     Rheem does not understand the allegations of paragraph 38, therefore, such allegations are denied.

## CLAIM TWO - VIOLATION OF ERISA

39.     The allegations contained in paragraph 39 of the Complaint are denied except as specifically admitted hereinabove.

40.     Rheem admits only that Plaintiff was a participant in the Pension Plan at no cost to her throughout the term of her employment.  Rheem also admits that the Pension Plan and Plaintiff's claims with respect to it are governed by ERISA.  Rheem denies the remaining allegations of paragraph 40 of the Complaint.

41.     The allegations contained in paragraph 41 are denied. Rheem states that the terms of the actual Pension Plan documents, which speak for themselves, base benefit eligibility on age and years of service.

42.     The allegations contained in paragraph 42 are denied.

43.     The allegations contained in paragraph 43 are denied.

44.     The allegations contained in paragraph 44 are denied.

45.     The allegations contained in paragraph 45 are denied.

46.     The allegations contained in paragraph 46 are denied.

47.     The allegations contained in paragraph 47 are denied.

48.     The allegations contained in paragraph 48 are denied.

49.     The allegations contained in paragraph 49 are denied.

50.     The allegations contained in paragraph 50 are denied.  In further answer to paragraph 50 of the Complaint, Rheem states that Plaintiff received STD coverage at no cost to

her throughout her employment.  Plaintiff enrolled in Rheem's voluntary LTD plan during an open enrollment period in 2004.

51.    Rheem admits only that Plaintiff sustained a work related injury to her left hand (finger[s]) on or about April 6, 2004 and that shortly thereafter she returned to work under medical restrictions imposed by her authorized treating physician.  Plaintiff recovered from this injury and it is not related to any issue in this action.  Plaintiff received workers' compensation medical benefits for this injury in the ordinary course of events without incident.  The remaining allegations of paragraph 51 are denied.

52.    The allegations contained in paragraph 52 are denied.  In further answer to paragraph 52, Rheem states that determinations of Plaintiff's eligibility for STD and LTD benefits were made independently by the insurance carrier.

53.    The allegations contained in paragraph 53 are denied.

54.    The allegations contained in paragraph 55 are denied.

55.    The allegations contained in paragraph 55 are denied.  Rheem admits only that Plaintiff obtained LTD insurance coverage during an open enrollment period in May 2004 and that she paid premiums for that coverage via a standard payroll deduction plan from May 2004 to August 2004.  The remaining allegations of paragraph 55 are denied.

56.    Rheem admits only that Plaintiff paid monthly premiums for LTD insurance coverage from May 2004 to August 2004.  The remaining allegations of paragraph 56 of the Complaint are denied.

57.    The allegations contained in paragraph 57 are denied.

58.    The allegations contained in paragraph 58 are denied.

59.    The allegations contained in paragraph 59 are denied.

8

60.    The allegations contained in paragraph 60 are denied.

61.    The allegations contained in paragraph 61 are denied.

62.    The allegations contained in paragraph 62 are denied.

63.    The allegations contained in paragraph 63 are denied.

64.    The allegations contained in paragraph 64 are denied.

## CLAIM THREE - NEGLIGENT HIRING, SUPERVISION
## AND TRAINING

65.    All allegations of paragraph 65 of the Complaint are denied, except as specifically admitted.

66.    The allegations contained in paragraph 66 are denied.  All of Plaintiff's state law claims are preempted by ERISA.

67.    The allegations contained in paragraph 67 are denied.

## CLAIM FOUR - NEGLIGENT RETENTION

68.    All allegations of paragraph 68 of the Complaint are denied except as specifically admitted.

69.    The allegations contained in paragraph 69 are denied.  All of Plaintiff's state law claims are preempted by ERISA.

70.    The allegations contained in paragraph 70 are denied.

## CLAIM FIVE - NEGLIGENCE

71.    All allegations of paragraph 71 of the Complaint not specifically admitted above, are denied.

72.    The allegations contained in paragraph 72 are denied.  All of Plaintiff's state law claims are preempted by ERISA.

73.    The allegations contained in paragraph 73 are denied.

74.    The allegations contained in paragraph 74 are denied.

75.    All allegations of the Complaint not specifically admitted above are hereby denied.

76.    Rheem denies that it has violated any law and denies that Plaintiff is entitled to any recovery or relief whatsoever, including that requested in her PRAYER FOR RELIEF.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The statute of limitations bars some or all of Plaintiff's claims against Rheem.

### SECOND DEFENSE

Plaintiff has failed to timely or fully exhaust her administrative remedies under USERRA and ERISA.

### THIRD DEFENSE

Some or all of Plaintiff's claims fail to state claims for which relief can be granted.

### FOURTH DEFENSE

There are no similarly situated employees of Rheem who have been treated differently than has Plaintiff.

### FIFTH DEFENSE

Plaintiff has failed to mitigate her damages, if any.

### SIXTH DEFENSE

All employment decisions made by Rheem respecting Plaintiff were made for legitimate, non-discriminatory, non-pretextual business reasons.  Rheem denies that neither Plaintiff's membership in the Alabama National Guard nor her status as a participant in any Employee Benefit Plan was a substantial contributing factor in any material decision regarding her

employment.

## SEVENTH DEFENSE

Plaintiff is estopped and lacks clean hands to seek the equitable relief she requests due to violation of Rheem' employee conduct and work rules including, but not limited to poor performance and excessive unexcused absenteeism.

## EIGHTH DEFENSE

Rheem states that it did not intentionally, willfully or maliciously violate any statute or law relied upon in the Complaint.  To the extent that Plaintiff's claims against Rheem rest on conduct that was innocent or without malice or without reckless indifference to Plaintiff's rights, punitive damages are not recoverable.

## NINTH DEFENSE

An award of punitive damages in this case is not appropriate.

## TENTH DEFENSE

To the extent that Plaintiff's claims are fraudulently brought, they are barred.

## ELEVENTH DEFENSE

To the extent that Plaintiff's claims have been waived, they are barred.

## TWELFTH DEFENSE

To the extent that Plaintiff might have been guilty of conduct, as yet unknown to Rheem which conduct would have prevented Plaintiff's employment or caused discharge, she is barred from seeking some or all damages.

## THIRTEENTH DEFENSE

Plaintiff complains about decisions made by different decision-makers.

## FOURTEENTH DEFENSE

The doctrine of laches bars some or all of Plaintiff's claims.

## FIFTEENTH DEFENSE

Defendant pleads judicial estoppel and lack of standing as to Plaintiff's claims.

## SIXTEENTH DEFENSE

Rheem pleads the "same actor" defense.

## SEVENTEENTH DEFENSE

Plaintiff is not entitled to recover any compensatory damages or punitive damages herein, and any allegations with respect thereto should be stricken, because Plaintiff has failed to plead facts sufficient to support such damages.

## EIGHTEENTH DEFENSE

With respect to all of Plaintiff's claims, Defendant pleads, in the alternative and without waiving any other defense, that the acts of Rheem were privileged under the law including, but not limited to, under the employment-at-will doctrine.

## NINETEENTH DEFENSE

Plaintiff voluntarily abandoned her employment.

## TWENTIETH DEFENSE

To the extent Plaintiff seeks recovery for any work related injury covered by Alabama Workers' Compensation laws, the court lacks subject matter jurisdiction.

## TWENTY-FIRST DEFENSE

Rheem pleads contributory negligence, failure to cooperate, assumption of the risk, last clear chance, waiver and the statute of frauds.

## TWENTY-SECOND DEFENSE

Plaintiff has represented that she is totally disabled and is estopped to assert otherwise in

this action.

## TWENTY-THIRD DEFENSE

Plaintiff's State law claims are barred by the doctrine of ERISA Preemption.

## TWENTY-FOURTH DEFENSE

USERRA does not apply to the facts of this case.

## TWENTY-FIFTH DEFENSE

Plaintiff is estopped to obtain the relief she requests because, among other things, she refused to obtain clarification of her new and confusing medical restrictions and to cooperate with Rheem's efforts to identify a suitable job for her.

## TWENTY-SIXTH DEFENSE

Plaintiff has not engaged in service in the Uniformed Services at any time material to this action.

## TWENTY-SEVENTH DEFENSE

Plaintiff has not been absent from her position of civilian employment because of service in the Uniformed Services.

## TWENTY-EIGHTH DEFENSE

Plaintiff did not notify Rheem in advance of any pending military service and furnished no Orders with respect thereto.

## TWENTY-NINTH DEFENSE

Plaintiff failed to return to work or seek reemployment within five (5) years of having performed service in the military services, if any.

## THIRTIETH DEFENSE

Plaintiff failed to timely return to work or apply for reemployment after service in the

Uniformed Services, if any.

## THIRTY-FIRST DEFENSE

Rheem pleads that it is impossible and/or unreasonable to reinstate Plaintiff due to her medical restrictions, her refusal to make good faith effort to perform jobs assigned to her and her refusal to provide clarification of her new and confusing medical restrictions.

## THIRTY-SECOND DEFENSE

In the alternative, Rheem pleads that Plaintiff's service in the Uniformed Services, if any, was thirty (30) days or less; therefore, Plaintiff had no protection against discharge.

## THIRTY-THIRD DEFENSE

Rheem terminated Plaintiff for cause. Rheem would have made the same employment decision regardless of Plaintiff's protected and/or military status.

## THIRTY-FOURTH DEFENSE

If and to the extent Plaintiff did render service in the Uniformed Services in August of 2000 as alleged in the Complaint, Rheem fulfilled its obligation to reinstate Plaintiff on or about June 25, 2001 when Plaintiff returned to work under restrictions imposed by her medical doctor. Plaintiff was not removed from Rheem's payroll until December 21, 2005, more than five (5) years after Plaintiff claims to have rendered service in the Uniformed Services.

## THIRTY-FIFTH DEFENSE

Rheem cannot reasonably accommodate Plaintiff's service related injury, because Plaintiff is unable or unwilling to perform any gainful position at Rheem with or without a reasonable accommodation.

## THIRTY-SIXTH DEFENSE

Rheem reserves the right to assert other defenses as discovery proceeds.

## CONSTITUTIONAL DEFENSES

### FIRST CONSTITUTIONAL DEFENSE

Any award of punitive damages and/or damages for mental anguish or emotional distress would violate the constitutional safeguards provided under the Constitution of the United States and of the various states, including the Constitution of the State of Alabama.

### SECOND CONSTITUTIONAL DEFENSE

Any award of punitive damages and/or damages for mental anguish or emotional distress to Plaintiff would violate the constitutional safeguards provided under the Constitution of the United States and the Constitution of the State of Alabama in that the determination of such damages under the applicable state law is vague, is not based on any objective standards, and is not rationally related to legitimate government interests.

### THIRD CONSTITUTIONAL DEFENSE

Plaintiff's claims for punitive damages violate the separation of powers requirement of the constitutions of the various states, by allowing courts and juries, rather than a legislature, to determine what conduct constitutes punishable conduct and the amount of punishment therefore.

### FOURTH CONSTITUTIONAL DEFENSE

Plaintiff's claims for punitive damages violate the Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments of the Constitution of the United States on the following grounds:

a.    It is a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution to impose punitive damages, which are penal in nature, against a civil defendant upon Plaintiff's satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal

cases;

b.  The procedures pursuant to which punitive damages are awarded and the guidelines given to jurors are vague and ambiguous and fail to provide specific standards on the determination of whether to award punitive damages or specific standards as to a constitutionally reasonable limit on the amount of any award against defendants, which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

c.  The procedures pursuant to which punitive damages are awarded are vague and ambiguous and fail to provide specific standards for the amount of the award of punitive damages which allows jurors broad, unlimited and undefined power to make determinations based on passion, personal beliefs and/or uninformed ideas of what the law permits, rather than what the law requires;

d.  The procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts and, thus, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

e.  The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes on the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

f.  The procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrongdoing, which infringes on defendants' Due Process and Equal Protection rights under the Fourteenth Amendment of the United States Constitution;

g.  Any award of punitive damages to Plaintiff would violate the Self-Incrimination Clause of the Fifth Amendment of the United States Constitution, because punitive damages are penal in nature, yet a defendant may be compelled to disclose potentially incriminating documents and evidence;

h.   Plaintiff's attempt to impose punitive or extra contractual damages on defendants on the basis of the conduct of others violates the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution;

i.   Any award of punitive damages to Plaintiff would violate the procedural safeguards provided to defendants under the Sixth Amendment of the United States Constitution in that punitive damages are penal in nature, and consequently, a defendant in a case in which punitive damages are sought should be entitled to the same procedural safeguards accorded to a defendant in a criminal proceeding;

j.   Plaintiff's Complaint, to the extent that it seeks exemplary or punitive damages, violates defendants' rights to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution;

k.   Plaintiff's Complaint, to the extent that it seeks exemplary or punitive damages, violates defendants' right to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and as provided in the Constitution of the various states;

l.   Plaintiff's claims for punitive damages violate equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution; and

m.   Any award of punitive damages would violate defendant's right to trial by jury in violation of the Seventh Amendment to the Constitution of the United States.

## FIFTH CONSTITUTIONAL DEFENSE

Plaintiff's claims for multiple and/or punitive damages and/or damages for mental anguish/emotional distress violate due process as guaranteed by the Fifth and Fourteenth Amendment to the United States Constitution in that:

a.   there is no requirement that punitive damages be reasonably proportionate to any element of compensatory damages;

b.   there is no requirement that punitive damages;

c.     review of punitive damage awards for excessiveness without objective proportionality requirements and other objective requirements is wholly personal and subjective;

d.     punitive damages instructions insufficiently inform the jury as to the nature and purpose of punitive damages and the instructions are not saved by a post trial review at the trial and/or appellate levels;

e.     the preponderance of the evidence standard of proof, where applicable, is not high enough to satisfy due process where a defendant faces a punitive damage award;

f.     the criteria for an award of punitive damages and/or damages for mental anguish/emotional distress are impermissibly vague and uncertain;

g.     the criteria for review of an award of punitive damages and/or damages for mental anguish/emotional distress on appeal are impermissibly vague and uncertain; and

h.     the jury is instructed that punitive damages are permitted to set an example to deter others and/or otherwise relate to the conduct of others or the conduct of a defendant outside the scope of this litigation, subjecting a defendant to potential for multiple penalties for the same conduct, and/or to penalties for the conduct of others.

## SIXTH CONSTITUTIONAL DEFENSE

With respect to Plaintiffs' demand for punitive damages, defendant specifically incorporates by reference any and all standards or limitations regarding the determination, review and/or enforceability of punitive damage awards which arose in *BMW of No. America v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L.Ed.2d 809 (1996); *Cooper Industries, Inc., v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); and in *State Farm Mut. Auto. Ins. Co., v. Campbell*, 123 S. Ct. 1513 (2003).

## SEVENTH CONSTITUTIONAL DEFENSE

The imposition of punitive damages against any of the Defendants in this case would

violate the Defendants' due process rights as guaranteed by the United States Constitution, because the award of punitive damages is excessive in light of the following criteria: (1) the degree of reprehensibility of the defendants' alleged wrongful conduct; (2) the disparity between the harm or potential harm and the punitive damage award; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in other cases.

## EIGHTH CONSTITUTIONAL DEFENSE

Imposition of punitive damages against this defendant would have a chilling effect upon the defendant's right to open access to the courts of this state, in violation of the United States Constitution.

## NINTH CONSTITUTIONAL DEFENSE

The procedures pursuant to which punitive damages are awarded subject civil defendants to punishment for the conduct of others through vicarious liability or through non-apportionment of damages among joint tortfeasors, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## TENTH CONSTITUTIONAL DEFENSE

Plaintiff is not entitled to recover punitive damages because Plaintiff cannot prove that defendants' conduct involved such malice, wantonness, oppression, fraud, willfulness, recklessness, or wickedness as amounts to criminality, which for the good of society and warning to the individual ought to be punished.

## ELEVENTH CONSTITUTIONAL DEFENSE

Plaintiffs' claims for punitive damages should not be submitted to the jury because, under the United States Supreme Court's holding in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 533 U.S. 424, 121 S. Ct. 1678, 149 L.Ed. 2d 674 (2001), and the Alabama Supreme Court's

holding in *Horton Homes, Inc. v. Brooks*, 832 So. 2d 44 (Ala. 2001), the issue of punitive

damages is not a question of fact to be decided by a jury.  See also, *Gasperini v. Center for*

*Humanities, Inc.*, 518 U.S. 415, 459, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996).

## TWELFTH CONSTITUTIONAL DEFENSE

An award of mental anguish damages in this case will violate this defendant's due process

and equal protection rights guaranteed by the *United States Constitution* because juries are not

given any rules, standards, or guidelines upon which to rely in calculating mental anguish or

emotional distress damage awards.

## THIRTEENTH CONSTITUTIONAL DEFENSE

To award plaintiff damages for alleged mental anguish or emotional distress in the

absence of any standards for the determination of mental anguish and/or the absence of any

requirements for corroborating or objective evidence of mental anguish or emotional distress

makes such an award tantamount to punitive damages. As such, this defendant avers that such an

award in this case would violate the *United States Constitution*.

Respectfully submitted,


s/Henry C. Barnett, Jr.
**HENRY C. BARNETT, JR. (BAR037)**
*ATTORNEY FOR DEFENDANTS*

**OF COUNSEL:**
CAPELL & HOWARD, P. C.
150 South Perry Street
Post Office Box 2069
Montgomery, Alabama  36104
(334) 241-8000
(334) 323-8888

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of September 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Trina S. Williams
Vicky U. Toles
TOLES & WILLIAMS, LLP
1015 South McDonough Street
Montgomery, Alabama 36104


s/Henry C. Barnett, Jr.
OF COUNSEL

# EXHIBIT "1"



# SELMA NEUROLOGY CENTER

RASSAN M. TARABEIN, M.D.

429 LAUDERDALE STREET
SELMA, AL 36701

OFFICE: (334) 875-4164 877-9911
FAX: (334) 874-0027

Date: _Donna Early_____ Accident Date: _____

Name of Injured: _____ D.O.B. _____

Description of Injury: _____

Diagnosis: _LS disc dx / Cervicalgia_____

Treatment Plan: _Blanks PRN_____

Medications Prescribed: _NSAIDS_____

If restricted from immediate return to work, explain reason in detail: _____

May return to unrestricted work (date): _____

May return to restricted work (date): _6-8-01  →  9-7-01_

Restrictions: _____

| PHYSICAL LIMITATIONS: | | Full Duty | Partial Duty | No Duty |
|---|---|---|---|---|
| Sedentary - lifting 0 - 10 lbs. | | X | | |
| Light - lifting 10 - 20 lbs. | | X | | |
| Moderate - lifting 20 - 50 lbs. | | | X | |
| Heavy - lifting 50-100 lbs. | | | | X |
| Pulling/Pushing, Carrying | | X | | |
| Reaching or Working Above Shoulders | | | X | |
| Walking Hrs. per day | (2) hrs/shift | X | | |
| Standing Hrs. per day | (2) " " | X | | |
| Sitting Hrs. per day | (4) " " | X | | |
| Stooping Hrs. per day | ( ) | | | X |
| Kneeling Hrs. per day | ( ) | | | X |
| Bending Hrs. per day | ( ) | | | X |
| Repeatedly work Hrs. per day | ( ) | X | | |
| Climbing Hrs. per day | ( ) | X | | |

Doctor's Signature _____

June 19, 2001

Dr. Mendez:

This video shows the requirements of the Assembler positions installing bung plugs in water tanks.  The work pace is reasonable and the tool used to install the plugs is suspended on a counter-balanced pulley above the line.  Lifting is minimal.  There's no kneeling or stooping, no appreciable bending, and no work above shoulder level.  While these jobs are normally performed in a standing position, for the purpose of this video, I taped one operator standing and one sitting.  I propose we allow Ms. Early to stand or sit as necessary for her comfort – and we're certainly willing to permit this.

Please advise if you or Dr. Tarabein have any concerns

Don Reckart
Employment Manager



# Selma Neurology & Pain Clinic

### R. M. Tarabein, M.D.

1023 Med. Ctr. Pkwy
Suite 307
Selma AL 36701
**(334) 877-9911**

www.mydoctor.com/tarabein

To: Dr Mendez

Date: 06 21 2001

Re: Ms Donna Early

Dear Dr Mendez:

I agree that Ms Early would be able to perform the job you demonstrated to me at my office yesterday.

Should you have any further question please do not hesitate to contact me.

Sincerely

R. M. Tarabein, M.D.





RMT/III/061700

# EXHIBIT "2"



# EASTERN SHORE
# NEUROLOGY CLINICS, INC.

### Rassan M. Tarabein, M.D.

| | |
|---|---|
| **Daphne** | **Foley** |
| 28080 US Highway 98 Suite D | 1721 North Bunner Street |
| Daphne, Alabama 36526 | Foley, Alabama 36535 |
| Office: (334) 621-9106 | Office: (334) 971-1650 |
| Fax: (334) 621-9165 | Fax: (334) 971-9101 |

Date: 8-11-04                                Accident Date: _____

Name of Injured: Donna Farly                 D.O.B. 2-20-68

Description of Injury: _____

Diagnosis: _____

Treatment Plan: Spinal Bloch — PRN

Medications Prescribed: NSAIDS

If restricted from immediate return to work, explain reason in detail: _____

May return to unrestricted work (date): _____

May return to restricted work (date): 8-11-04 → 9/15/04

Restrictions: total restriction of R Arm (still may use R hand)

| PHYSICAL LIMITATIONS: | Full Duty | Partial Duty | No Duty |
|---|---|---|---|
| Sedentary - lifting 0-10 lbs. | ✓ | | |
| Light - lifting 10-20 lbs. | ✓ | | |
| Moderate - lifting 20-50 lbs. | | ✓ | |
| Heavy - liftings 50-100 lbs. | | | ✓ |
| Pulling/Pushing, Carrying | ✓ | | |
| Reaching or Working Above Shoulders | | ✓ | |
| Walking Hrs. per day ( ) | ✓ | | |
| Standing Hrs. per day ( ) | ✓ | | |
| Sitting Hrs. per day ( ) | ✓ | | |
| Stooping Hrs. per day ( ) | | | ✓ |
| Kneeling Hrs. per day ( ) | | | ✓ |
| Bending Hrs. per day ( ) | | | ✓ |
| Repeatedly work Hrs. per day ( ) | | | |
| Climbing Hrs. per day ( ) | ✓ | | |

Doctor's Signature _____

# MEMO TO FILE

**RE: D. Early, Clock #4624, Assembler, Dept. 09 – 1st shift**

**DATE: 08/11/2004 – 2:30 pm**

**SUBJ: Non-work connected disability**

On the above date and time the writer met with employee D. Early and Facilitator N. Lewis (Dept. 09) to review a document presented by the employee on 8/11/04 that restricted her ability to perform physical activities related to the essential functions of her current position.

The employee was asked for clarification of conflicting comments presented by Dr. Rassan M. Tarabein M.D; the physician treating her for a VA compensated injury, which totally restricted the use of her right arm.

Ms. Early was further informed the restriction made by her physician, on the RTW documentation dated 8/11/04, appeared to be in direct conflict with physical limitations the physician had approved on the RTW form.

The writer informed Ms. Early; at this time the company could not accommodate the restriction cited by Dr. Tarabein, without further clarification of the restriction and physical limitations. Ms. Early was presented with a Rheem disability application form, and again informed by the writer that she should not RTW until the company received full medical clarification of her non-work connected restriction and physical limitations.

**CLM**

**8/13/04**



**Rheem Water Heaters**

2600 GUNTER PARK DRIVE EAST · MONTGOMERY, AL 36109-1413 · Phone (334) 260-1500

August 20, 2004

Ms. Donna Early
3338 Norman Bridge Rd.
Montgomery, AL 36105

Dear Ms. Early,

On August 13, 2004 the writer informed you that the Company was not able, at this time, to accommodate the non-work connected restrictions outlined in correspondence you provided the company dated August 11, 2004. During the session on August 13, 2004 you were provided a copy of the company group disability insurance brochure, with instructions regarding the process for filing a claim.

It should be noted that during our conversation on August 13, 2004, the writer requested that you provide clarification of the right arm restriction noted in correspondence to the company dated August 11, 2004.

On August 20, 2004 you again met with the writer, and the request for clarification of the restriction noted in the August 11, 2004 correspondence was repeated. You indicated, in response to the writer's request for clarification, that you believed your physician had provided the required information.

Ms. Early, I would again request that you or your physician provide the company with medical clarification of the non-work connected restrictions cited in the August 11, 2004 correspondence, which totally restrict the use of your right arm; while allowing use of the right hand only to perform full duty sedentary tasks lifting 0-10 lbs, full duty light lifting tasks involving weights of 10-20lbs, and partial duty tasks lifting weights of 20-50lbs.

Please feel free to contact me at 334/260-1378, if there are questions related to this matter.

Sincerely,

Cal Mears
Employee Relations Manager

Cc: file

# EXHIBIT "3"



**Rheem Water Heaters**

2600 GUNTER PARK DRIVE EAST · MONTGOMERY, AL 36109-1413 · Phone (334) 260-1500

January 3, 2006

Donna Early
3338 Norman Bridge Road
Montgomery, AL 36105

Dear Donna:

Per our phone conversation, this letter confirms your resignation termination of employment effective Wednesday, December 21, 2005.

You have been on a leave of absence from work at Rheem since August 12, 2004 when you were requested to provide medical clarification of your non-work related restrictions, which you claimed limited your ability to perform tasks required of your job at Rheem. In October 2004, your claim for short term disability benefits was denied by the insurer due to lack of sufficient medical documentation to support the claim.

It is now well more than a year since you went on leave of absence status and you still have not provided Rheem with medical clarification of your restrictions, nor provided documentation releasing you from restrictions to enable you to return to work at Rheem. Therefore, you now are considered terminated due to voluntary resignation of employment.

Sincerely,

*Alfred J. Gardner*

Alfred J. Gardner
Human Resources Manager

Cc:    Alora Perkins
       Clarence Mears

**COPY**